**Russell PARRY, By and Through Dee and Linda PARRY, his legally appointed Guardians, Plaintiff,**

**v.**

**Charlotte CRAWFORD, in her official capacity as the Director of the Department of Human Resources; Carlos Brandenburg, in his official capacity as the Administrator of the Division of Mental Hygiene and Mental Retardation; Myla C. Florence, in her official capacity as the Administrator of the Welfare Division, Defendants.**

No. CV–S–96–778–PMP–LRL.

United States District Court,
D. Nevada.

Jan. 15, 1998.

Daniel P. Brzovic, Nevada Disability Advocacy and Law Center, Reno, NV, for Plaintiff.

Joyce E. Borkenhagen, Deputy Atty. Gen., Frankie Sue Del Papa, Atty. Gen., Las Vegas, NV, for Defendants.

## ORDER

PRO, District Judge.

Presently before the Court are two motions relating to Plaintiff Russell Parry's ("Parry") claim that the Defendants, through their positions with the Nevada State Department of Human Resources, have improperly denied him Medicaid benefits. Parry filed his Complaint on August 28, 1996, for Declaratory and Injunctive Relief regarding his entitlement to various benefits under the Federal Medicaid Program, Title XIX of the Social Security Act, 42 U.S.C. §§ 1396—1396u. On December 30, 1996, Parry filed his First Amended Complaint (# 11), which added a claim under 42 U.S.C. § 1983.

On May 20, 1997, Defendants Charlotte Crawford ("Crawford"), Carlos Brandenburg ("Brandenburg") and Myla C. Florence ("Florence") filed a Motion for Summary Judgment (# 16). Parry filed an Opposition (# 18) on June 9, 1997. Additionally, on June 11, 1997, Parry filed a Motion for Partial Summary Judgment (# 19). On July 15, 1997, Defendants filed a Reply to Plaintiff's Opposition to Defendants' Motion for Summary Judgment and Opposition to Plaintiff's Motion for Partial Summary Judgment

(# 24). On July 29, 1997, Parry filed a Reply to both motions (# 25).

## I. SUMMARY JUDGMENT STANDARD

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56. All facts and inferences drawn must be viewed in the light most favorable to the responding party when determining whether a genuine issue of material fact exists for summary judgment purposes. *Poller v. CBS, Inc.*, 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962). Summary judgment will be granted only if all reasonable inferences defeat the respondent's claims. *Admiralty Fund v. Tabor*, 677 F.2d 1297, 1298 (9th Cir.1982).

The party moving for summary judgment has the initial burden of showing the absence of a genuine issue of material fact. *Metro Indus., Inc. v. Sammi Corp.*, 82 F.3d 839, 847 (9th Cir.), *cert. denied,* — U.S. —, 117 S.Ct. 181, 136 L.Ed.2d 120 (1996). Once the movant's burden is met by presenting evidence which, if uncontroverted, would entitle the movant to a directed verdict at trial, the burden shifts to the respondent to set forth specific facts demonstrating that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the movant meets this burden, then summary judgment will be granted unless there is significant probative evidence tending to support the opponent's legal theory. *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 290, 88 S.Ct. 1575, 20 L.Ed.2d 569, (1968), *reh'g denied,* 393 U.S. 901, 89 S.Ct. 63, 21 L.Ed.2d 188 (1968).

Parties seeking to defeat summary judgment cannot stand on their pleadings once the movant has submitted affidavits or other similar materials. Affidavits that do not affirmatively demonstrate personal knowledge are insufficient. *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir.1978), *cert. denied,* 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979), *reh'g denied,* 441 U.S. 968, 99 S.Ct. 2420, 60 L.Ed.2d 1074 (1979). Likewise, "legal memoranda and oral argument are not evidence and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment." *Id.*

## II. FACTS

Parry is an adult who has an IQ within the range of 72–87, has been diagnosed with autism and who has an adaptive functioning level of 2 years, 11 months. Parry qualifies as having a condition related to mental retardation as defined in 42 C.F.R. § 435.1009.[1] As a result, Parry receives Supplemental Security Income ("SSI"). Parry, because he receives SSI, receives Medicaid benefits as a member of the categorically needy. *See* 42 U.S.C. § 1396a(a)(10)(A)(i)(II).

Parry currently lives with his parents, but due to his behavioral problems, it has become increasingly difficult for his parents to care for him. In June of 1994, Parry applied for respite and vocational training from Desert Regional Center ("DRC"). DRC is an agency of the Division of Mental Hygiene and Mental Retardation. DRC denied his application. In February of 1996, Parry applied for Home and Community–Based Services Waiver ("HCB") from DRC, including a supported living arrangement. Parry was denied on the grounds that he was not a mentally retarded individual. On February 8, 1996, Parry was notified of this rejection, and on March 15, 1996, the Nevada Welfare office sent notice to Parry of his ineligibility for supported living services, habilitation services and counseling because he did not qualify for placement in an Intermediate Care Facility for the Mentally Retarded ("ICF–MR").

The notice sent to Parry informed him of his right to a hearing, and an officer of the Nevada State Welfare Division conducted a hearing on May 13, 1996. At the hearing, the State claimed it intended to amend HCB, eliminating such services for individuals with conditions related to mental retardation. On May 31, 1996, the Welfare Division Office upheld the denial of services to Parry be-

---

1. All C.F.R. citations are to the October 1, 1996 edition.

cause he was not mentally retarded, and therefore did not qualify for admission to an ICF–MR.[2]

On August 28, 1996, Parry applied to DRC, this time for residential placement in an ICF–MR. DRC denied this application, and the Welfare Division did not send him a notice of denial articulating his right to a hearing. Also on August 28, 1996, Parry filed the instant action, seeking injunctive and declaratory relief based on the failure of the State of Nevada to provide HCB services or placement in an ICF–MR. Parry's Amended Complaint also seeks relief for an alleged violation of the Social Security Act's notice requirements, and a 42 U.S.C. § 1983 claim for a violation of his right to certain Medicaid Services.

## III. DISCUSSION

### A. Overview of the Medicaid Program

The federal Medicaid program is a federal-state program which provides medical care benefits to certain categories of needy individuals. States receive federal matching funds for Medicaid services and administration. A state which elects to establish a Medicaid program must comply with federal requirements. *Wilder v. Virginia Hosp. Ass'n.*, 496 U.S. 498, 502, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990).

■ Once a state establishes a Medicaid program and receives federal funds, it must provide a number of mandatory services for the categorically needy. 42 C.F.R. § 440.210. The state may also provide certain optional services.[3] 42 C.F.R. § 440.225. This gives a state flexibility in setting up its Medicaid program. If services other than those listed as mandatory are not provided in a state plan, a recipient has no entitlement to them. However, once a state provides any services for which it receives matching funds, including optional services, that service becomes part of the Medicaid plan, subject to the requirements of federal law. *Sobky v.*

*Smoley,* 855 F.Supp. 1123, 1127 (E.D.Cal. 1994).

Federal law requires that the services available to any categorically needy individual must be "equal in amount, duration, and scope for all recipients in the group." 42 U.S.C. § 1396a(a)(10)(B)(i); 42 C.F.R. § 440.240. There are exceptions to the rule of comparability, the only one relevant to this case is 42 U.S.C. § 1396n, which provides that comparability requirements may be waived if a state provides HCB services. 42 U.S.C. § 1396n(c)(3).

■ The Medicaid Act also requires that services be sufficient in amount, duration and scope to reasonably achieve its purpose. 42 C.F.R. § 440.230(b). While a state may choose the balance of amount, scope and duration, this must be done in the best interests of the recipients. *See Alexander v. Choate,* 469 U.S. 287, 303, 105 S.Ct. 712, 83 L.Ed.2d 661 (1985).

### B. Jurisdiction

#### 1. Ripeness

■ Defendants contend that Parry's claim is not ripe, as he has failed to show in his complaint that he has been denied any funding for ICF–MR services by the Medicaid agency. Instead, Defendants contend that Parry has merely shown that one particular facility, DRC, denied him services due to the fact that it does not offer services to persons with conditions related to mental retardation.

Defendants' argument is patently incorrect. In Defendants' Answer (# 14) to the First Amended Complaint, Defendants "admit that Plaintiff was denied ICF–MR placement and Home and Community–Based Medical services because the *State Medicaid Plan* only provides for such services for the mentally retarded." (Defendants' Answer to First Amended Complaint, # 14 at 2, 11. 9–13)(emphasis added). The notice of denial sent to the Parrys by the Welfare Division of

---

**2.** On August 1, 1996, the Department of Health and Human Services of Region IX of the Health Care Financing Administration ("HCFA") sent notice that it had approved an amendment to Nevada's HCB effective May 1, 1996, which explicitly limited the eligible population of recipients to persons with mental retardation. Based on this amendment, Parry has stated that he will not pursue the claim for HCB. (Plaintiff's Reply, (# 25) at 3).

**3.** ICF-MRs are optional services.

the Department of Human Resources on March 15, 1996, stated that Parry was not eligible for HCB "because you do not qualify for placement in an Intermediate Care Facility for the Mentally Retarded (ICF/MR)." (Defendant's Mtn. for Summary Judgment, # 16 Ex. E). Furthermore, the Decision by the Hearing Officer in Parry's case stated that mental retardation was a criterion for placement in an ICF/MR in Nevada. (Defendant's Mtn. for Summary Judgment, # 16 Ex. F). Finally, Mary Lee, a Social Welfare Program Specialist working for the State of Nevada Welfare Division, in an affidavit offered by the Defendants, states that a "diagnosis of mental retardation [is required] in order for ICF/MR services to be authorized for Medicaid payment." (Defendant's Mtn. for Summary Judgment, # 16 Ex. G).

In light of Defendants' admission that Parry was denied ICF–MR placement because he is not mentally retarded, it seems disingenuous at the very least for Defendants to argue in their Reply (# 24) that Parry's denial of ICF–MR services was based solely on the fact that DRC does not provide such services, and that if Parry applied to a different facility, ICF–MR services could be provided. Parry's claim is ripe, as he has been denied ICF–MR services, and as Defendants have stated that a diagnosis of mental retardation is required for ICF–MR eligibility.

### 2. Standing

Defendant Crawford is the Director of the Department of Human Resources, the State agency overseeing the administration of the Medicaid program. Defendant Florence is the Administrator of the Welfare Division of the Department of Human Resources, which actually administers the Medicaid program. Defendants argue that standing against these two Defendants is improper for the same reasons that they argue Parry's claim is not ripe. As discussed supra, these arguments fail.

 Defendants contend that Parry lacks standing to sue Brandenburg because Brandenburg merely administers DRC, and Parry has failed to show he is entitled to services from DRC. Defendants contend that DRC is merely an independent facility providing services, which has no connection to the administration of Nevada Medicaid. "Neither Car-

los Brandenburg nor DRC have anything to do with the administration of the Medicaid program for the State." (Defendant's Opposition/Reply, # 24 at 6 11. 11–12). In support of this contention, Defendants refer to several sections of the Nevada Revised Statutes: N.R.S. §§ 435.060, 433.234, 435.081, 433.254. Nothing in these statutory provisions supports Defendants' argument. Parry, on the other hand, offers the Deposition of Lisa Selthofner, a supervisor for Community Services with DRC. Ms. Selthofner's testimony reveals the following facts: (1) all ICF–MR services in Clark County are provided through DRC; (2) if anyone in Clark County sought placement in an ICF–MR, they would apply to DRC; (3) that DRC contracted with other agencies to provide the ICF–MR formal services in the community; (4) that DRC did not formally provide the service, but that a person must have an open case with DRC; and (5) that no application is made directly to the provider of ICF–MR services. (Deposition of Lisa Selthofner, # 21 at 37, 11. 9–25; 38 11. 1–8).

In response to this evidence offered by Parry, Defendants rely on unsupported assertions in their pleadings. This is insufficient to meet their burden under the summary judgment standard. The only evidence before this Court illustrates that DRC determines eligibility for ICF–MR services. As a result, DRC is involved with the administration of the Medicaid program in Nevada, and standing against Brandenburg is proper.

### 3. 42 U.S.C. § 1983

Defendants argue that Parry has failed to allege a violation of a federal right, privilege or immunity, as required under § 1983. In support, Defendants cite *Blessing v. Freestone*, 520 U.S. 329, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997). Defendants' reliance on *Blessing* is misplaced. In *Blessing*, the Court addressed a claim by five Arizona mothers under Title IV–D of the Social Security Act, claiming that the State of Arizona's systemic failures violated their individual rights to have mandated services delivered in "substantial compliance" with the statute and the related regulations. *Id.* 117 S.Ct. at 1356. To determine if a statutory provision gave rise to a federal right, the Court looked

at three requirements: (1) the provision in question must benefit the plaintiff; (2) the plaintiff must show that the statute is not "vague and amorphous" such that enforcement would strain judicial competence; and (3) the statute must unambiguously impose a binding obligation on the States. *Id.* at 1359.

Applying this test, the Court found that while particular rights might be enforceable, the plaintiffs had not identified any particular rights in their complaint. *Id.* at 1360. Rather, the plaintiffs had merely asserted "substantial compliance" with the provisions as a right. While alleging a right of "substantial compliance" painted with too broad a brush, the Court found that when well defined claims were articulated, legislation could give rise to statutory rights. *Id.*

■ The right alleged in the case before this Court, that of ICF–MR services for individuals with conditions related to mental retardation, but who are not diagnosed as mentally retarded, is sufficiently well defined under the *Blessing* analysis. The provision in question would benefit Parry, as he personally would qualify for placement in such a facility, with funding from the state and federal government. Determining whether a diagnosis of mental retardation is a prerequisite for qualifying for ICF–MR services does not strain judicial competence, and there is a binding obligation on the states to comply with federal mandates for categorically needy Medicaid recipients. Therefore, Parry has stated a federal right sufficient to support his § 1983 claim.[4]

#### 4. Eleventh Amendment

Despite the clear holding of *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), Defendants argue that Parry's suit against them in their official capacity, for injunctive and declaratory relief only, is improper. Defendants provide no persuasive authority for this proposition. Defendants also contend that Parry's suit is barred under the analysis of *Seminole Tribe v. Florida*, 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). In *Seminole Tribe*, the Court

found that when Congress had set forth a detailed remedial scheme for the enforcement of a statutorily created right against a state, a court should hesitate before allowing a suit under *Ex parte Young*. *Id.* 116 S.Ct. at 1132.

■ Defendants merely allege that Parry's suit is prohibited by the existence of enforcement procedures under the Medicaid Act allowing the Secretary to attempt to bring a state into compliance with federal law. This is insufficient. A "plaintiff's ability to invoke § 1983 cannot be defeated simply by '[t]he availability of administrative mechanisms to protect the plaintiff's interests.'" *Blessing*, 520 U.S. at ——, 117 S.Ct. at 1363 (citing *Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 106, 110 S.Ct. 444, 107 L.Ed.2d 420 (1989)). If oversight powers are accompanied by limited grievance procedures for individuals, § 1983 is still available. *Id.* 117 S.Ct. at 1363. Defendants have made no showing of a detailed remedial scheme for the enforcement of rights created under the Medicaid Act sufficient to foreclose a remedy under *Ex parte Young*. Therefore, Parry's § 1983 action is not improper on this basis.

#### C. Substantive and Procedural Claims

In his complaint, Parry alleges three substantive claims, the 1994, February 1996 and August 1996 denial of his application to DRC. Procedurally, he alleges a deprivation of his right to notice as to each of these denials. This Order will address each denial as a substantive claim, then address the procedural issues relating to those claims.

#### 1. Denial of Parry's Application

##### a. 1994 Claim

Defendants allege that the respite and job/vocational services Parry applied for in 1994 are entirely supported by State funds. (Defendant's Mtn. for Summary Judgment, # 16 Ex. G, Affidavit of Mary Lee). As no Medicaid dollars are used for these services,

---

4. Defendants also argue, based on the concurring opinion in *Blessing*, that a third-party beneficiary such as Parry may not sue under § 1983. However, there is no Supreme Court rule supporting this point, and two Supreme Court cases have allowed suits by third-party beneficiaries under § 1983. *See, Wilder*, 496 U.S. 498, 110 S.Ct. 2510; *Wright v. Roanoke Redevelopment and Hous., Auth.*, 479 U.S. 418, 107 S.Ct. 766, 93 L.Ed.2d 781 (1987).

the provisions of the Medicaid statute cited by Parry do not apply. Parry fails to address this issue in any of his responsive pleadings. Therefore, summary judgment for Defendants on this claim is granted.

### b. February 1996 Claim

Parry applied in February of 1996 for HCB. He was denied these services because he was not mentally retarded. (Defendant's Mtn. for Summary Judgment, # 16 at 4). However, subsequent to that denial, Nevada's HCB service was retroactively amended, to May 1, 1996, to exclude persons without a diagnosis of mental retardation.[5] In his Reply (# 25), Parry acknowledges this, and states that he will not pursue the claim for HCB at trial. Since Parry has conceded that the State may waive the comparability requirements for HCB (Plaintiff's Mtn. for Partial Summary Judgment, # 19 at 18), summary judgment for Defendants is proper on this issue.

### c. August 1996 Claim

In connection with filing this lawsuit in August of 1996, Parry applied for ICF–MR services from DRC and was denied, since he had not been diagnosed as mentally retarded. Defendants, in their Motion for Summary Judgment (# 16), argue that Nevada's Medicaid Plan restricts ICF–MR services to individuals who have been diagnosed as mentally retarded, and that such a restriction is permissible under federal law. In their Opposition/Reply (# 24) Defendants switch the emphasis of their argument, and contend that Parry's rejection was based on the fact that he has not accessed a qualified provider who services individuals with conditions related to mental retardation. As discussed supra in the section of this Order addressing Ripeness, Defendants' argument is implausible.

Nevada's State Plan under the section entitled "Amount, Duration, and Scope of the Medical and Remedial Care and Services Provided to the Categorically Needy" provides that services in a public institution for the mentally retarded or persons with related conditions are provided with limitations. The limitations section explains that prior authorization is required from the Institutional Care Unit on Form NMO–49. The

Medicaid Services Manual *further* states that a person must be diagnosed with mental retardation to qualify. Therefore, Nevada's Plan provides services to the mentally retarded or those with related conditions with limitation, the limitation discovered by delving into regulations is that services are only provided to the mentally retarded.

▇▇ The issue before this Court is whether Nevada may permissible limit ICF–MR services to only those individuals who have been diagnosed as mentally retarded. Defendants argue that the choice of whether to provide such services exclusively to the mentally retarded, or to include individuals with related conditions is a choice left up to the states under the Medicaid Act. They base this argument on several provisions of the Medicaid Act. The first is the set of definitions found in the federal regulations relating to mental retardation. Under that section, 42 C.F.R. § 435.1009, an institution for the mentally retarded or persons with related conditions is defined as a facility that is "primarily for the diagnosis, treatment, or rehabilitation of the mentally retarded or persons with related conditions[.]" 42 C.F.R. § 435.1009. Defendants argue that because the regulation says mentally retarded or persons with related conditions, a state is free to offer services exclusively to those with mental retardation.

Defendants further contend that if Congress had intended to require states to offer such services to both the mentally retarded and those with related conditions, the definition would have a conjunctive "and" in the place of the present disjunctive "or." However, if that were the case, extending Defendants' reasoning, the State would actually be *limited* to providing ICF–MR facilities to those who were both mentally retarded and had a condition related to mental retardation.

Congress intended to provide services to those who are financially and functionally needy through the Medicaid Act. The purpose of the Act mandates that the definitions of ICF–MR encompass both those who are diagnosed with mental retardation and those

---

5. Defendants concede that the provision allowing waiver for HCB does not allow waivers of the

statutory requirements for ICF–MRs. (Defendant's Reply/Opposition, # 24 at 4).

who have conditions related to mental retardation. This is the only logical conclusion, as those with conditions related to mental retardation may have severe functional difficulties requiring care to an equal extent as those with a diagnosis of mental retardation. In fact, 42 C.F.R. § 435.1009 defines "persons with related conditions" as those who have a severe, chronic, condition, related either to cerebral palsy, epilepsy, or closely related to mental retardation, which results in substantial functional limitations in three or more listed areas of major life activity. Defendants offer no evidence nor any reason why Congress would allow states to exclude persons with related conditions from ICF–MR facilities due merely to the fact that they lack a diagnosis of mental retardation.

Furthermore, Defendants have offered no basis to infer that categorically needy recipients who are diagnosed with mental retardation have a greater medical need than those with a condition related to mental retardation. A differing medical need of this nature is one of the few permissible basis for differentiating between the categorically needy. 42 C.F.R. § 440.230(d). Thus, under Nevada's present plan, individuals defined as categorically needy, but who possess the same functional need, may be offered different services.

The question presented to this Court is this: If the federal definition of an ICF–MR encompasses both those diagnosed as mentally retarded and those with conditions related to mental retardation, may a state formulate a Medicaid Plan which defines ICF–MR services as excluding one group or the other? Given the comparability requirements of the Medicaid Act, the answer is clearly no. Parry is categorically needy, and therefore must receive the same services as other categorically needy individuals, unless an exception to this rule applies. However, under Nevada's current plan, a categorically needy individual diagnosed with mental retardation is eligible for ICF–MR services, regardless of medical need. Parry, as a person with a condition related to mental retardation, is ineligible, despite the definition of an ICF–MR, which encompasses service to persons with a condition related to mental retardation. This distinction renders Nevada's plan impermissible.

The State of Nevada has great flexibility under the sufficiency of services provision, 42 C.F.R. § 440.230, to determine the scope and duration of ICF–MR services. However, the State cannot provide an optional service such as ICF–MRs to the categorically needy, then as part of the definition of scope under the sufficiency requirements exclude an entire class of categorically needy individuals. To do so is to interpret the sufficiency requirement as nullifying the comparability requirement. Additionally, sufficiency limitations must be in the best interests of the recipients. As those with related conditions are listed as possible recipients under the federal regulations, excluding them from service entirely does not meet the sufficiency test.

It is admittedly difficult to comprehend and articulate the manner in which the many provisions of the Medicaid Act relate to one another. However, keeping the purpose of the Act in mind—to provide services to those who need them and cannot afford them, with consideration of the high costs to a state of providing such services—this Court determines that Parry's interpretation of the requirements of the Act is correct.

## 2. Notice of Hearing

### a. 1994 Denial

Parry has failed to establish that he was entitled to a hearing and notice regarding his 1994 denial for vocational services, since these services were entirely State funded, as discussed supra. Therefore, summary judgment for Defendants on this issue is appropriate.

### b. 1996 Denials

When DRC denied Parry services in February of 1996, it sent him a letter notifying him of the denial, with no mention of his right to a hearing. Parry then wrote to the Nevada State Welfare Division, requesting a hearing, on February 12, 1996. The Welfare Division sent Parry notice of his denial and "Hearing Information and Request" on March 15, 1996. This notice stated that the applicant could request a conference with an agency representative and request a hearing by marking the appropriate boxes, signing the letter, and returning it to the Medicaid agency at an included address. Parry re-

quested, and received a hearing on May 13, 1996.

Parry's August 1996 application was delivered to DRC by Parry's attorney, and contained no new information relating to a diagnosis of mental retardation. DRC rejected the application in a letter to Parry's attorney on September 17, 1996. The Welfare Division did not send a letter of denial or notice of appeal rights.

Under the Medicaid Act, an individual whose claim for medical assistance under a state plan is denied is entitled an opportunity for a fair hearing. 42 U.S.C. § 1396a(a)(3). At the time of an action affecting the individual's claim, the agency must inform the applicant in writing: (1) of the right to a hearing; (2) of the method by which a hearing is obtained; and (3) that the applicant may represent himself or herself, use legal counsel, a relative, a friend, or other spokesman. 42 C.F.R. § 431.206. The notice must contain other detailed information under 42 C.F.R. § 431.210, such as a statement of what action will be taken, the reasons for that action, the specific regulations supporting that action, and an individual's right to request a hearing.

■ If DRC was merely a provider of services, as Defendants argue without support, DRC would not be required to notify applicants of hearing rights when DRC rejected an application to its facility. However, this Court has found that DRC determines eligibility ICF–MRs, and a rejection by DRC is a determination of eligibility under the Medicaid Act. Notice of an applicant's hearing rights, and full compliance with 42 C.F.R. §§ 431.206 and 431.210 is therefore required.

Parry has never received notice from DRC complying with the statutory provisions. The notice sent to Parry regarding his February 1996 denial, (Plaintiff's Reply, # 25 Ex. E), gave no notice of hearing rights nor did it comply with the other C.F.R. requirements. Parry eventually received a letter from the Welfare Division stating that Parry did not qualify for HCB services provided through DRC. The letter included notice that an individual may request a hearing, but did not fully comply with the other requirements of 42 C.F.R. § 431.206. However, this letter was sent only *after* Parry had written to the Welfare Division requesting a hearing. As DRC had determined eligibility for ICF–MR services under the State Plan, it was DRC's obligation to send notice complying with the federal regulations.

■ As to the total failure to send formal notice regarding the August 1996 denial, Defendants contend it is unreasonable for an applicant, who repeatedly requests the same benefits for which he or she is found ineligible, to expect a hearing each time the application is denied. However, the Medicaid Act clearly provides for notice upon the denial of an application. 42 U.S.C. § 1396a(a)(3). In addition to denial of a claim for services, certain other actions, such as a termination, reduction, or suspension of services also entitle the applicant to a hearing. Defendants distort the plain language of 42 U.S.C. § 1396a(a)(3) and 42 C.F.R. § 431.220 with their contention that the denial of services does not entitle the applicant to a hearing because it is not an "action" under 42 C.F.R. § 431.210. Additionally, this Court sees little hardship in sending notice of denial and right to a hearing when an application is denied. While there are costs to such a hearing, Congress has made that determination in requiring notice and a hearing when benefits are denied. Defendants have cited no authority that notice and a hearing are mandated only when circumstances have changed from a previous application.[6] The plain language of the statute and the implementing

---

**6.** Defendants cite *King v. Sullivan*, 776 F.Supp. 645, 657 (D.R.I.1991), in which the court found that an applicant must describe changed circumstances before the procedural requirements of the Act are triggered. However, that case is distinguishable. *King* addressed level of care evaluations of recipients who required different ICF–MR services than they currently received. *Id.* at 657. The court found that a state had a duty to promptly redetermine "a current recipient's eligibility—a level-of-care determination—when the recipient formally brings to the agency's attention a change in his or her circumstances that could make him or her eligible for a different level of services." *Id.* at 658–59. The situation before this Court is the initial eligibility determination for ICF–MR services, which clearly requires a hearing when an application is denied.

regulations evidences no such requirement, and Defendants' argument accordingly fails.

Parry has established his right to Declaratory relief that individuals with conditions related to mental retardation but not diagnosed as mentally retarded qualify for ICF–MR services. He has also established his right to notice complying with 42 C.F.R. §§ 431.206 & 431.210 upon denial from DRC.

Defendants have established their right to summary judgment in terms of the 1994 denial, the notice relating to that action and the February 1996 denial of HCB services.

IT IS THEREFORE ORDERED THAT Defendant's Motion for Summary Judgment (# 16) is GRANTED as to Parry's claim for: (1) the 1994 denial of vocational services and the notice relating thereto; and (2) the February 1996 denial of Home Community Based Waiver Services. Defendant's Motion is DENIED in all other respects.

IT IS FURTHER ORDERED THAT Plaintiff's Motion for Partial Summary Judgment (# 19) is GRANTED as to: (1) Declaratory Relief that the State of Nevada Medicaid Plan provision restricting eligibility for Intermediate Care Facilities for the Mentally Retarded to only individuals diagnosed with mental retardation is impermissible; and (2) that Plaintiff was entitled to notice, complying with 42 C.F.R. §§ 431.206 & 431.210 from DRC regarding the denial of his 1996 applications to DRC.